1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT FOR THE
         WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE
9

10   UNITED STATES OF AMERICA,              NO.  CV23-2010

11              Plaintiff,

12         v.                               **VERIFIED COMPLAINT**
                                            **FOR FORFEITURE *IN REM***
13
     APPROXIMATELY 32.68342694 BITCOIN
14   (AND FUNDS DERIVED THEREFROM)
     FORMERLY HELD IN WALLET
15   ADDRESS 1G3pyCCFENTp8EHANrG-
     BpmEKNobPqA5CLg, SEIZED FROM A
16   BINANCE.COM EXCHANGE ACCOUNT
     ASSOCIATED WITH USER ID 395972026,
17
18              Defendant.
19

20        COMES NOW the United States, by and through its undersigned counsel, and

21   alleges:

22              **I.      NATURE OF THE ACTION**

23        1.      This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C.

24   § 981(a)(1)(C) for forfeiture of cryptocurrency that constitutes or is derived from

25   proceeds traceable to a violation of specified unlawful activity as defined in 18 U.S.C.

26   § 1956(c)(7), including but not limited to wire fraud, 18 U.S.C. § 1343, or conspiracy to

27   commit wire fraud, 18 U.S.C. § 1349.

Verified Complaint for Forfeiture *in Rem* - 1
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2.      This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 981(a)(1)(A) for forfeiture of cryptocurrency that is involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, or any property traceable to such property.

## II.      PLAINTIFF AND DEFENDANT *IN REM*

3.      The plaintiff is the United States of America (the "Plaintiff" or "Government" or "United States").

4.      The defendant consists of approximately 32.68342694 Bitcoin (the Defendant Cryptocurrency), seized by the United States Secret Service (USSS) from an account at Binance associated with User ID 395972026 (the Subject Account).

5.      The Subject Account was registered on January 26, 2022, using a telephone number ending x5174 and a specific email address provided by the user associated with the Subject Account ("Subject Account Email"). The initials of the user associated with the Subject Account are O.S.A.

6.      The Defendant Cryptocurrency was formerly held in wallet address 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg (the Subject Wallet or "1G3pyC") in the Subject Account.

7.      Pursuant to a forfeiture seizure warrant issued in the Western District of Washington, Cause No. MC23-062, and executed on August 4, 2023, the USSS took custody of the Defendant Cryptocurrency on or about October 2, 2023, and it remains in that agency's custody.

8.      According to www.blockchain.com, on October 2, 2023, one BTC was equal to approximately $27,505.30 United States dollars. Therefore, on the date of seizure, 32.68342694 BTC would convert to approximately $898,975 in United States currency. The value of cryptocurrency fluctuates and at any given time may be more or less than this estimate.

//

Verified Complaint for Forfeiture *in Rem* - 2
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### III.    JURISDICTION AND VENUE

9.     This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and has jurisdiction over an action for forfeiture under 28 U.S.C. § 1355(a) and (b).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district.

11.     Pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the Defendant Cryptocurrency vests in the United States at the time of the acts giving rise to the forfeiture.

12.     Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable belief that the United States will be able to meet its burden of proof at trial are as follows and have been verified by the attached Verification of USSS Special Agent Paul Vanderwulp.

13.     As provided in Supplemental Rule G(3)(b)(i), the Clerk of Court is required to issue a warrant to arrest the Defendant Cryptocurrency if it is in the government's possession, custody, or control. As such, the Court will have *in rem* jurisdiction over the Defendant Cryptocurrency when the accompanying Warrant of Arrest *In Rem* is issued, executed, and returned to the Court.

### IV.    SUMMARY OF BASES FOR FORFEITURE

14.     The United States alleges that the Defendant Cryptocurrency was involved in transactions and attempted transactions in violation of 18 U.S.C. §§ 1956 and 1957 (Money Laundering) and 1956(h) (Conspiracy to Commit Money Laundering) and constitutes, or was derived from, proceeds traceable to violations of 18 U.S.C. §§ 1343 (Wire Fraud) and 1349 (Conspiracy to Commit Wire Fraud). The Defendant Cryptocurrency is, therefore, subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

Verified Complaint for Forfeiture *in Rem* - 3
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15.     The Defendant Cryptocurrency contains the remnants of funds swindled from victims, including victims in the Western District of Washington, through the course of a Business Email Compromise wire fraud scheme. These funds were subsequently laundered through a web of financial accounts and cryptocurrency wallet addresses before coming to rest in the Subject Account.

16.     Some of the conspirators, including D.W.B., D.B.R., M.A.L., A.L., S.W., P.H., M.K., E.S., L.S., and K.D.W.[1] opened financial accounts at Wells Fargo Bank, N.A.; Bank of America, N.A.; JPMorgan Chase Bank, N.A., ACU, and UCB, bearing the names of what appeared to be legitimate real estate businesses, including The Payoff Service LLC; The Payoff Collection LLC; AKL Development LLC; Payoff Clearing Account; Payoff Service Account; and Payoff Processing Fund.

17.     The conspirators used these multiple financial accounts to facilitate the fraud and to conceal and disguise the source and destination of the illicitly procured funds by using multiple techniques, including instructing victims to wire funds to accounts at different financial institutions, with different entity names, and controlled by different conspirators; rapidly moving funds from the original gaining accounts to other accounts they controlled; converting the funds to personal checks and cashier's checks which were deposited to different accounts; withdrawing funds in cash; converting funds into virtual currency; transferring that virtual currency through a maze of wallet addresses; and comingling their fraud proceeds. Ultimately, though they traveled different paths, funds from multiple victims arrived at the same destination.

18.     Investigators have traced approximately 10.69 BTC derived from proceeds defrauded from four identified victims from the initial fraudulent wire transfers, through a series of financial accounts at multiple financial institutions, cash withdrawals, checks, purchases of cryptocurrency using wire transfers and cash purchases through

---

[1] Conspirators other than the individual associated with the Subject Wallet in the Subject Account are identified in this Complaint using their initials.

Verified Complaint for Forfeiture *in Rem* - 4
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

cryptocurrency kiosks, and transactions on the blockchain, into the Subject Wallet in the Subject Account, from which the Defendant Cryptocurrency was seized.

## V.    PURPOSE OF FORFEITURE

19.    The purpose of this forfeiture action *in rem* is two-fold. First, forfeiture of the Defendant Cryptocurrency provides a means for the United States to help victims of the fraud scheme recover their funds. Second, forfeiture deters criminal activity by forfeiting and vesting title of the Defendant Cryptocurrency with the United States so that criminals do not maintain the fruits of crime and do not keep property that facilitated or was involved in crime.

## VI.    THE LAW

20.    Pursuant to 18 U.S.C. § 1343, it is unlawful to devise or intend "to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. . . ."

21.    Pursuant to 18 U.S.C. § 1349, it is unlawful to attempt or conspire to commit a violation of 18 U.S.C. § 1343.

22.    Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [a federal money laundering offense, 18 U.S.C. § 1956], or any property traceable to such property" is subject to forfeiture to the United States.

23.    Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting a 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense" is subject to forfeiture to the United States.

Verified Complaint for Forfeiture *in Rem* - 5
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

24.     Pursuant to 18 U.S.C. §1956(a)(1), it is unlawful to knowingly conduct or attempt to conduct a "financial transaction" with proceeds from "specified unlawful activity" (SUA) with specific intent to: promote the SUA, conceal or disguise the source, origin, nature, ownership, or control of the proceeds, evade reporting requirements, or evade taxes. 18 U.S.C. § 1956(h) prohibits conspiracies to commit money laundering.

25.     Pursuant to 18 U.S.C. §1956(a)(1), it is unlawful to knowingly engage or attempt to engage in a "monetary transaction" in property of a value greater than $10,000 which is derived from "specified unlawful activity." 18 U.S.C. § 1956(h) prohibits conspiracies to commit money laundering.

26.     Pursuant to 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1)(B), the offenses of wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, constitute specific unlawful activity.

## VII.   BACKGROUND ON BUSINESS EMAIL COMPROMISE SCHEMES

27.     Business Email Compromise ("BEC") schemes generally involve deceiving businesses to induct them to initiate large wire transfers from the business' accounts to those controlled by the criminal organization or individual.

28.     Since 2013, the Federal Bureau of Investigation (FBI) has tracked the emergence of BEC schemes worldwide. The criminal enterprises that perpetuate these schemes have targeted companies and organizations in every U.S. state and in more than 100 countries around the world. The losses caused by BEC schemes are in the billions of dollars and climbing.

29.     The victims of BEC schemes range from small businesses to large corporations. Perpetrators will typically monitor and study their selected victims using social engineering techniques prior to initiating the BEC scheme. In many cases, the perpetrators can accurately identify the individuals and protocols necessary to perform wire transfers within a specific business environment.

Verified Complaint for Forfeiture *in Rem* - 6
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

30. As with many computer or internet facilitated financial crimes, the perpetrators of BEC schemes are increasingly using "money mules" to cash out the proceeds of their schemes and move the money to offshore accounts controlled by the operators of the schemes. "Money mules" are those hired by cybercrime rings to move the proceeds of financially motivated cybercrimes from the target country to the perpetrator's home country. The money mules are often not directly involved in the attack against the victim of the BEC scheme and are only responsible for receiving and laundering the funds. In recent years, however, law enforcement has encountered professional money mules who repeatedly engage in these types of transactions fully aware of the criminal nature of their activities. In addition, cybercrime rings have begun to develop organized groups of money mules and money mule services that are offered to other criminal organizations for a fee.

31. The FBI has noted some of the following characteristics of BEC complaints:

a. Businesses and associated personnel using open-source email accounts are predominately targeted;

b. Individuals responsible for handling wire transfers within a specific business are targeted;

c. Spoofed emails closely mimic a legitimate email request;

d. Fraudulent email requests for a wire transfer are well-worded, specific to the business being victimized, and do not raise suspicions about the legitimacy of the request; and

e. The amount of the fraudulent wire transfer request is business-specific, so dollar amounts requested are similar to normal business transaction amounts to avoid raising suspicion.

//
//

Verified Complaint for Forfeiture *in Rem* - 7
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VIII.   BACKGROUND ON DIGITAL OR VIRTUAL CURRENCY

32.     Virtual or Digital Currency: Digital currency (also known as cryptocurrency or virtual currency)[2] is generally defined as an electronic-source unit of value that can be used as a substitute for fiat currency (i.e., currency created and regulated by a government). Cryptocurrency, a type of virtual currency, is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.[3] Digital currency is not issued by any government or bank (in contrast to fiat currency) and is, instead, generated and controlled through computer software operating on a decentralized peer-to-peer network. Cryptocurrency can exist digitally on the Internet, in an electronic storage device, or in cloud based servers.

33.     Digital currency is legal in the United States and accepted for legitimate financial transactions. However, it is also often used for conducting illegal transactions or for concealing or disguising the true nature, source, location, ownership, or control of illegally obtained criminal proceeds. Bitcoin and Ethereum are some of the most commonly used and well-known digital currencies.

34.     Perpetrators of fraud will often conduct an otherwise unnecessary number of transactions in the transfer of funds in an effort to layer ill-gotten funds to ultimately conceal or disguise the nature, location, source, ownership, or control of those proceeds when transferred into a cryptocurrency exchange. The number of hops in the transactions is a strong indication that the movement of funds was performed in a manner meant to conceal or disguise the nature, location, source, ownership, or control of the proceeds of a specified unlawful activity, to wit, wire fraud.

---

[2] For purposes of this Complaint, the terms "digital currency," "cryptocurrency," and "virtual currency" are used interchangeably and address the same concept.

[3] Fiat currency is currency issued and regulated by a government, such as the U.S. Dollar, Euro, or Japanese Yen.

Verified Complaint for Forfeiture *in Rem* - 8
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

35.     Perpetrators of fraud often launder proceeds of their fraud schemes through several virtual wallet addresses or accounts before transferring the proceeds to those individuals near or at the top of the criminal organization's hierarchy.

36.     Virtual or Digital Currency Addresses:  Digital or virtual currency addresses are the virtual locations to which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented as a strong of alphanumeric characters. A user of virtual currency can utilize multiple addresses at any given time and there is no limit to the number of addresses any one user can utilize.

37.     Private Key: Each virtual currency address is controlled through a unique corresponding private key, a cryptographic equivalent of a password needed to access the address. Only the holder of an address's private key can authorize a transfer of virtual currency from that address to another address.

38.     Address Owner:  The identity of an address owner is generally considered to pseudonymous (unless the owner opts to make the information publicly available), often law enforcement and currency exchanges can use the blockchain to identify the owner of a particular address and trace fraud proceeds from victims to one or more exchanges or wallets. The analysis can also, in some instances, reveal additional addresses controlled by the same individual or entity.

39.     Blockchain:  Many virtual currencies publicly record their transactions on what is referred to as the "blockchain."[4] The blockchain is essentially a distributed public ledger, run by a decentralized network, containing an immutable and historical record of every transaction that has ever occurred utilizing that blockchain's specific technology. The blockchain can be updated multiple times per hour and record every virtual currency address that ever received that virtual currency. It also maintains records of every

---

[4] Some cryptocurrencies operate on blockchains that are not public and operate in such a way to obfuscate transactions, making it difficult to trace or attribute transactions.

Verified Complaint for Forfeiture *in Rem* - 9
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

transaction and all the known balances for each virtual currency address. There are different blockchains for different types of virtual currencies. Investigators can follow or "trace" funds on public blockchains, a practice known as "blockchain analysis."

40.     Blockchain Analysis: It is virtually impossible to look at a single transaction on a blockchain and immediately ascertain the identity of the individual behind the transaction. That is because blockchain data generally consist only of alphanumeric strings and timestamps. But law enforcement can obtain leads regarding the identity of the owner of an address by analyzing blockchain data to figure out whether that same individual is connected to other relevant addresses on the blockchain. To analyze blockchain data, law enforcement can use blockchain explorers as well as commercial services offered by blockchain-analysis companies. These companies analyze virtual currency blockchains and attempt to identify the individuals or groups involved in transactions. Through numerous unrelated investigations, law enforcement has found the information provided by these tools to be reliable.

41.     Virtual Currency Wallet: A virtual currency wallet is a software application that interfaces with the virtual currency's specific blockchain and generates and stores a user's addresses and private keys. A virtual currency wallet also allows users to send and receive virtual currencies. Multiple addresses can be stored in a wallet. Even though the public address of those engaging in digital currency transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public address are not recorded. If a real individual or entity is linked to a public address, however, it may be possible to determine what transactions were conducted by that individual or entity. Therefore, digital transactions are often described as "pseudonymous," meaning they are partially anonymous. Most individuals are identified when they use a digital currency exchange to make a transaction between digital currency and fiat currency, or through digital currency exchangers that voluntarily or through legal order, cooperate with law enforcement.

Verified Complaint for Forfeiture *in Rem* - 10
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

42.     Virtual Currency Exchange: A digital or virtual currency exchange (an "exchange") is a business that allows customers to trade digital currencies for other digital or fiat currencies. An exchange can be a brick-and-mortar business, or strictly an online business. Both brick and mortar and online exchanges accept a wide variety of digital currencies, and exchange them for fiat and traditional payment methods, other digital currencies, or transfers between digital currency owners. Many exchanges are located outside the boundaries of the United States to avoid regulation and legal requirements. One of the largest and most popular exchanges is Binance.

43.     Because exchanges act as money services businesses, they are legally required to conduct due diligence of their customers (i.e., "know your customer" or "KYC" checks) and to have anti-money laundering programs in place.

44.     Peel chain: Peel chain is a technique used to launder large amounts of illegally obtained cryptocurrency by funding a long series of small transactions. In other words, a small amount is "peeled" from a person's holdings in a low-value transfer again and again, often through an exchange where it can be converted to fiat currency.

### IX.     SCHEME TO DEFRAUD AND FINANCIAL TRACING

45.     This case involves a Business Email Compromise (BEC) wire fraud scheme, perpetrated on victims across the United States, including in the Western District of Washington. The wire fraud scheme involved compromising email and facsimile systems of multiple businesses and using those compromised systems without authority to fraudulently obtain funds intended to be used in legitimate real estate transactions. The conspirators impersonated personnel or customers of the victim businesses and directed them to initiate wire transfers to bank accounts controlled by the conspirators. The conspirators engaged in layered financial transactions designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds. Many of these transactions involved more than $10,000 of proceeds from the wire fraud scheme.

Verified Complaint for Forfeiture *in Rem* - 11
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

46.     Proceeds defrauded from at least four identified victims of the wire fraud scheme flowed into and through financial accounts controlled by the conspirators and were ultimately traced to the Subject Wallet ("1G3pyC") in the Subject Account, where they were seized. Several victims sent wire transfers to multiple financial accounts, bearing different names, and controlled by different conspirators working together. For example, one victim sent wire transfers to four different banks, directed to four business names, and controlled by four conspirators:

| Date | Amount | Financial Account | Business Name | Conspirator |
|------|--------|-------------------|---------------|-------------|
| 2-22-2022 | $60,652.81 | JPMorgan Chase x7218 | The Payoff Collection LLC | M.K. |
| 3-8-2022 | $60,629.30 | Wells Fargo x7903 | Payoff Clearing Account | S.W. |
| 3-24-2022 | $107,149.96 | Wells Fargo x7903 | Payoff Clearing Account | S.W. |
| 3-25-2022 | $43,419.17 | Bank of America x3839 | Payoff Clearing Account | S.W. |
| 4-4-2022 | $99,502.49 | JPMorgan Chase x5767 | The Payoff Express LLC | E.S. |
| 4-6-2022 | $159,190.19 | Wells Fargo 8183 | Payoff Service Account | P.H. |

47.     The USSS initiated this investigation after receiving a fraud report from a victim business located in Seattle, Washington, which lost approximately $1,192,339.33 after falling victim to this BEC wire fraud scheme. Subsequent investigation identified more than ten additional victim businesses of this BEC wire fraud scheme and at least $4 million dollars of fraudulently obtained criminal proceeds.

48.     Based on the Know Your Customer ("KYC") information provided to Binance, the Subject Account was registered from Nigeria.

49.     This Complaint does not include all of the financial analysis of fiat and virtual currency performed, but focuses on the tracing of specific funds from victims into

Verified Complaint for Forfeiture *in Rem* - 12
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Subject Account, to demonstrate the concerted efforts to launder and obfuscate the flow of victim funds into the Subject Account. Financial account numbers and cryptocurrency addresses are truncated throughout this Complaint.

50.     Identified victims of this BEC fraud scheme include:

a.     Victim 1 is a real estate closing business located in Seattle, Washington, which incurred a total loss of approximately $1,192,339.33. Victims 1 – 5 are all victims of the same BEC wire fraud scheme conducted by these conspirators. Fraud proceeds obtained from Victim 1 have not been traced to the Subject Account, but have been traced to financial accounts of one or more conspirators involved in the scheme who also received victim funds that have been traced to the Subject Account. The imposter email addresses used to compromise the eFax systems of Victims 1, 2, and 3 are connected by computer cookies.

b.     Victim 2 is a law firm located in Florida, which incurred a total loss of approximately $530,543.92.

c.     Victim 3 is a law firm located in Florida, which incurred a total loss of approximately $425,572.59.

d.     Victim 4 is a title company located in Florida, which incurred a total loss of approximately $302,683.25.

e.     Victim 5 is a title company located in Florida, which incurred a total loss of approximately $198,888.07.

Proceeds of the BEC fraud scheme obtained from Victim 2, Victim 3, Victim 4, and Victim 5 have been traced to the Subject Wallet in the Subject Account, from which the Defendant Cryptocurrency was seized. Graphic images depicting this tracing are embedded herein and attached as Exhibits A, B, and C. Exhibit D depicts tracing from each of these four victims into the Subject Account.

//

Verified Complaint for Forfeiture *in Rem* - 13
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Conspirator Financial Accounts*

51.     Some of the conspirators opened numerous accounts at financial institutions, using the names of individuals, entities, or both. The primary accounts involved in tracing funds defrauded from Victims 1-5 appear in the table below, with reference monikers. The names of individual conspirators are abbreviated to initials.

| Financial Institution | Account Ending | Name | Moniker |
|---|---|---|---|
| Wells Fargo | -5021 | D.W.B. dba Payoff Processing Fund | WF Account 1 |
| Wells Fargo | -6202 | D.B.R. dba Payoff Service Processing | WF Account 2 |
| Wells Fargo | -7903 | S.W. dba Payoff Clearing Account | WF Account 3 |
| Wells Fargo | -8183 | P.H. dba Payoff Service Account | WF Account 4 |
| Bank of America | -9274 | M.A.L. Sole Prop dba Payoff Clearing Account | BOA Account 1 |
| Bank of America | -5686- | AKL Development LLC | BOA Account 2 |
| Bank of America | -7812 | DBA Payoff Service Processing D.B.R. Sole Prop | BOA Account 3 |
| Bank of America | -3839 | S.W. Sole Prop dba Payoff Clearing Account | BOA Account 4 |
| Bank of America | -4988 | Payoff Service Account | BOA Account 5 |
| JPMorgan Chase | -1857 | D.W.B. dba Payoff Processing Fund | JPMC Account 1 |
| JPMorgan Chase | -7218 | M.K. dba The Payoff Collection LLC | JPMC Account 2 |
| Advantis Credit Union | -3002 | L.S. | ACU Account 1 |
| United Community Bank | -4746 | K.D.W. Payoff Account Service | UCB Account 1 |
| United Community Bank | -4754 | K.D.W. (check) | UCB Account 2 |
| Bank of the West | -3405 | M.K. | BOTW Account 1 |
| Bank of the West | -3447 | M.K. | BOTW Account 2 |

*Victim 1*

52.     On or around February 14, 2023, one or more conspirators successfully compromised Victim 1's eFax.com account, likely through a spear phishing email. Victim 1 used its eFax account to digitally send and receive faxes. One or more conspirators removed Victim 1's legitimate email address from the fax forwarding preferences to prevent faxes from arriving in Victim 1's email mailbox. One or more conspirators then added an email address they controlled ("Imposter Email 1"), to the fax

Verified Complaint for Forfeiture *in Rem* - 14
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

forwarding preferences, which allowed them to monitor eFax communications intended for Victim 1. The conspirators used the information they obtained from this subterfuge to review legitimate faxes to Victim 1's closing team and learn Victim 1's business practices. The conspirators used this information without authority to impersonate Victim 1's personnel and customers, and issued instructions to other Victim 1 employees, directing them to initiate wire transfers to bank accounts controlled by the conspirators.

53.     The conspirators used Imposter Email 1 address to monitor Victim 1's eFax account for approximately one month. During that period, Imposter Email 1 intercepted at least eight communications that were intended for Victim 1. Many of these communications contained wire transfer details, customer names, and other bank information related to financial transactions for escrow and estate closing proceedings.

54.     After compromising Victim 1's eFax account, one or more conspirators sent Victim 1 at least two wire instruction sheets that were forgeries, resulting in fraudulent wire transfers from Victim 1's corporate account at Capital Bank MD, totaling $1,192,339.33. The forged wire instructions purported to be mortgage payoff instructions in anticipated monetary amounts to be sent by wire transfer to anticipated financial institutions.

*Wire 1*

55.     On March 13, 2023, based on fraudulent wire transfer instructions, Victim 1 sent a wire transfer in the amount of $681,146.02 from Victim 1's corporate account at Capital Bank MD in the District of Washington to a Wells Fargo Bank, N.A. account ending -5021, located in Cedar Park, Texas (Wire 1).

a.     The receiving account is held in the name of [D.W.B.] dba Payoff Processing Fund (WF Account 1) and was opened on November 28, 2022. Account opening documents identify D.W.B. as the sole owner of the business.

b.     Immediately prior to receiving Wire 1, WF Account 1 had a balance of $30.00.

c.      One or more conspirators then used $100,000 of the fraud proceeds involved in Wire 1 to fund a personal check in the amount of $100,000, purportedly signed by D.W.B. This check was subsequently deposited to a JP Morgan Chase Bank, N.A. account ending -1857, held in the name of [D.W.B.] dba Payoff Processing Fund (JPMC Account 1). The balance in JPMC Account 1 prior to the deposit of this check was $5.00.

***Wire 2***

56.      On March 15, 2023, based on fraudulent wire transfer instructions, Victim 1 sent a wire transfer in the amount of $511,193.31 from Victim 1's corporate account at Capital Bank MD in the District of Washington to a Wells Fargo Bank, N.A. account ending -6202, located in Harris County, Texas (Wire 2).

a.      The receiving account is held in the name of [D.B.R.] dba Payoff Service Processing (WF Account 2) and was opened on October 26, 2022.

b.      Immediately prior to receiving the wire from Victim 1, WF Account 2 had a balance of $41.62.

57.      One or more conspirators then used $477,500 of fraud proceeds involved in Wire 2 to purchase four cashier's checks.

a.      On March 17, 2023, a cashier's check in the amount of $150,000 was deposited using an automated teller machine (ATM) into a Bank of America, N.A. account ending -9274. This account is held in the name of [M.A.L.] Sole Prop DBA Payoff Clearing Account (BOA Account 1) and was opened on September 20, 2022. The face of the cashier's check reflected D.B.R. as remitter and M.A.L. as payee.

b.      On March 17, 2023, a cashier's check in the amount of $150,000 was deposited by ATM into a Bank of America, N.A. account ending -5686. The receiving account is held in the name of AKL Development, with A.L. identified as managing member (BOA Account 2) and was opened on November 29, 2022. The face of the cashier's check reflects D.B.R. as remitter and A.L. as payee.

Verified Complaint for Forfeiture *in Rem* - 16
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c.   On March 16, 2023, a cashier's check in the amount of $150,000 was credited to a Bank of America, N.A. account ending -7812. This account is held in the name of DBA Payoff Service Processing [D.B.R.] Sole Prop (BOA Account 3) and was opened on October 26, 2022. The face of the cashier's check reflects D.B.R. as both remitter and payee.

d.   On March 16, 2023, a cashier's check number in the amount of $27,500 was provided to a bank teller for deposit into BOA Account 3. The face of the cashier's check reflects D.B.R. as both remitter and payee.

58.   On or about March 31, 2023, Magistrate Judge Mary Alice Theiler authorized seizure of the fraud proceeds from the wires sent by Victim 1 to BOA Accounts 1, 2, and 3. *See* Western District of Washington Cause No. MC23-027-MAT.

59.   On or about April 21, 2023, Magistrate Judge S. Kate Vaughn authorized seizure of the fraud proceeds from the wires sent by Victim 1 to JPMC Account 1. *See* Western District of Washington Cause No. MC23-035.

***Communication with Conspirator S.W.***

60.   On or about April 12, 2023, shortly after funds were seized from BOA Accounts 1, 2, and 3, an individual identifying herself as "S.W." called a USSS Special Agent to inquire about the seized funds. S.W. said that she was the mother of A.L., denied he was involved in any wrongdoing, and asked why he was targeted but the "other two" were not, without disclosing the names of the "other two."

61.   About a week later, on or about April 20, 2023, S.W. again called the same USSS Special Agent and admitted that she was paid to move money for an individual named W.W. and that she referred D.B.R. to W.W. for the same type of job. S.W. explained that D.B.R. and her two sons, M.A.L. and A.L., worked on the "[Victim 1] job" under her supervision because she was "training" them. Significantly, only the perpetrators of the fraud would have known that Victim 1 was the victim of the fraud scheme from which the proceeds were seized from the Bank of America accounts and

Verified Complaint for Forfeiture *in Rem* - 17
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that D.B.R., M.A.L., and A.L. were involved because this was not publicly available information. S.W. said that W.W., D.B.R. and the other individuals communicated with each other using email.

62.     Subsequently, on or about April 20, 2023, S.W. contacted the same USSS Special Agent to provide contact information for J.K., whom she claimed would validate that she was legitimately "employed" when she helped move funds, including for the Victim 1 transactions (Wire 1 and Wire 2). S.W. also said that she worked for at least two different people that she met online and that she was directed by these individuals to help move money.

63.     During this investigation, the USSS became aware that S.W. had an active warrant for her arrest from the Fayette County (Georgia) Sheriff's Office arising out of her involvement in a BEC scam that defrauded Victim 2, Victim 3, and other law firms that conduct real estate closing transactions. Upon her arrest by Georgia law enforcement, S.W. described several individuals that she referred to as her "handlers" as speaking with an "African" accent. M.A.L. and A.L. also informed law enforcement that they had spoken by telephone with a male who had an "African" accent.

*Victim 2*

64.     Victim 2 represents clients selling residential homes. In or around April 2022, Victim 2 was notified by three different individuals that the payoff for their home loans had not been received even though Victim 2 thought it had wired the funds as instructed.

65.     A subsequent investigation revealed that Victim 2's eFax.com account had been compromised in or around December 2021. One or more conspirators removed Victim 2's email address for the eFax account and replaced it with an email address they controlled, Imposter Email 2, so they could monitor legitimate incoming communications to Victim 2. As a result of this subterfuge, the conspirators obtained faxes with wiring instructions that Victim 2 was expecting and altered those wiring instructions. One or

Verified Complaint for Forfeiture *in Rem* - 18
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

more conspirators then removed Imposter Email 2 from Victim 2's compromised eFax account, replaced it with the true Victim 2 email address, and faxed the fraudulent wiring instructions to Victim 2's eFax account.

66.     Through this scheme, the conspirators duped Victim 2 into sending at least six wires transfers totaling over $530,000 into accounts in the custody and control of the conspirators. At least $322,198.43 of these proceeds was then transferred into other financial accounts controlled by one or more of the conspirators. Victim 2 sent at least $211,198.43 directly to S.W.'s accounts at Bank of America and Wells Fargo. Victim 2 sent a third wire transfer to a funnel account held by P.H., who then transferred approximately $111,000 of those funds to one of S.W.'s accounts at Bank of America.

a.     On or about March 8, 2022, based on fraudulent wire transfer instructions, Victim 2 wired $60,629.30 to a Wells Fargo account ending -7903. This account is held in the name of [S.W.], doing business as Payoff Clearing Account (WF Account 3), and was opened on January 19, 2022.

b.     On or about March 24, 2022, based on fraudulent wire transfer instructions, Victim 2 sent a second wire transfer of $107,149.96 to WF Account 3.

c.     On or about March 25, 2022, based on fraudulent wire transfer instructions, Victim 2 sent a wire transfer of $43,419.17 to a Bank of America account ending -3839, in the name of [S.W.] Sole Prop, doing business as Payoff Clearing Account (BOA Account 4).

d.     On or about April 6, 2022, based on fraudulent wire transfer instructions, Victim 2 wired $159,190.19 to a Wells Fargo account ending -8183. The receiving account was held in the name of [P.H.] (WF Account 4). Approximately one day later, P.H. rapidly depleted the funds from WF Account 4, including by sending $111,000 of the funds to WF Account 3.

//

//

Verified Complaint for Forfeiture *in Rem* - 19
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

***Victim 3***

67.     One or more conspirators also compromised the eFax account of Victim 3, which incurred losses totaling $425,572.59. Using the same *modus operandi*, the conspirators replaced Victim 3's true email address with Imposter Email 2, the same email address used in the compromise of Victim 2's eFax system, then sent fraudulent wire transfer instructions to Victim 3.

68.     On or about March 25, 2022, based on fraudulent wire instructions, Victim 3 wired $288,324.60 to WF Account 3.

***Further tracing of Proceeds Defrauded from Victim 2 and Victim 3***

69.     As described above, BEC fraud scheme Victims 2 and 3 sent wires based on fraudulent wire transfer instructions to bank accounts at Wells Fargo and Bank of America, in the name of or controlled by conspirators, including S.W. (WF Account 3).

70.     Victims 2 and 3 wired a total of $456,103.86 directly to WF Account 3. Victim 2 wired an additional $159,190.19 to WF Account 4; $111,000 of those funds were then wired from WF Account 4 to WF Account 3.

71.     After each wire was deposited to WF Account 3, one or more conspirators conducted financial transactions to remove the proceeds from that account, primarily using cash withdrawals and wire transfers to BOA Account 4.

      a.     <u>March 3, 2022 Victim 2 wire to WF Account 3 ($60,629.30)</u>:

          (1)     WF Account 3 had a balance immediately prior to the $60,629.30 wire of $3.00.

          (2)     On or about March 9, 2022, S.W. made a cash withdrawal of $20,000, wired $37,000.00 from WF Account 3 to BOA Account 4, and sent a peer-to-peer payment using Zelle to A.L., among other transactions.

      b.     <u>March 24, 2022 Victim 2 wire to WF Account 3 ($107,149.96)</u>:

          (1)     WF Account 3 had a balance immediately prior to the $107,149.96 wire from Victim 2 of $62.12.

Verified Complaint for Forfeiture *in Rem* - 20
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(2)     The only deposit to WF Account 3 between the first two wires from Victim 2 was a $30 online transfer from another S.W. account.

c.     <u>March 25, 2022 Victim 3 wire to WF Account 3 ($288,324)</u>:

(1)     WF Account 3 had a balance immediately prior to the $288,324 wire from Victim 3 of $105,197.08, all of which was proceeds from the wire transfers from Victim 2.

(2)     On or about March 25, 2022, S.W. made a cash withdrawal of $20,000 from WF Account 3 and a wire transfer of $81,000.00 from WF Account 3 to BOA Account 4.

(3)     On or about March 28, 2022, S.W. made a wire transfer of $200,000 to BOA Account 4, transferred approximately $18,850 to a Wells Fargo account ending -8497 that she holds with A.L., and a few other transactions, leaving a balance in BOA Account 4 of $59,006.68, all of which was proceeds from the wire transfers from Victims 2 and 3.

(4)     On or about March 29, 2022, S.W. withdrew cash of $20,000.

(5)     On or about March 31, 2022, S.W. withdrew cash of $25,000.

(6)     WF Account 3 had a closing balance on March 31, 2022 of $14,006.68, all of which was funds remaining from the wire transfers of Victims 2 and 3.

d.     Between March 9, 2022 and March 31, 2022, S.W. conducted multiple cash withdrawals from WF Account 3, totaling $85,000.00.

e.     <u>April 7, 2023 wire from P.H. of Victim 2 Funds ($111,000)</u>:

(1)     Prior to the $111,000 wire from P.H.'s WF Account 4, the balance in WF Account 3 was $22.32.

(2)     On or about April 8, 2022, S.W. made a $25,000 cash withdrawal and transferred $40,000 to BOA Account 4.

Verified Complaint for Forfeiture *in Rem* - 21
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(3)     On or about April 11, 2022, S.W. made a $30,000 cash withdrawal from WF Account 3 and a $5,000 purchase, using a linked debit card, leaving a balance in WF Account 3 of $77.32.

72.     BOA Account 4 received five deposits in March 2022:

a.     Three deposits were transfers from WF Account 4 consisting of proceeds defrauded from Victims 2 and 3, as set forth above.

b.     One was a transfer directly from Victim 2, which was also proceeds.

c.     One was a wire transfer in the amount of $67,253.40 from First Horizon Bank, described as "Pay off loan #417264900", which also appears to be proceeds of the BEC wire fraud scheme. The sending entity is Orion Title & Escrow LLC.

d.     Prior to the first deposit of March 1, 2022, the balance on BOA Account 4 was $1,000.

| Date | Amount | Sending Account | Destination Moniker | Destination Account Number |
|---|---|---|---|---|
| 3-1-2022 | $67,253.40 | First Horizon | BOA Account 4 | BOA-3839 |
| 3-9-2022 | $37,000.00 | WF Account 3 | BOA Account 4 | BOA-3839 |
| 3-25-2022 | $81,000.00 | WF Account 3 | BOA Account 4 | BOA-3839 |
| 3-25-2022 | $43,419.17 | Victim 2 | BOA Account 4 | BOA-3839 |
| 3-28-2022 | $200,000.00 | WF Account 3 | BOA Account 4 | BOA-3839 |
| Total: | $428,672.57 | | | |

e.     S.W. also made an additional wire transfer from WF Account 3 to BOA Account 4 of $40,000 on April 8, 2022, which consisted of proceeds defrauded from Victim 2.

f.     BOA Account 4 received three other deposits during this period, totaling $2,320, from a Zelle account associated with S.W.

g.     After the proceeds defrauded from Victims 2 and 3 were deposited into BOA Account 4, one or more conspirators made cash withdrawals from that account, totaling approximately $259,731 between March 10 and April 8, 2022.

Verified Complaint for Forfeiture *in Rem* - 22
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

73. Between March 3, 2022 and April 8, 2022, approximately $658,713.12 of fraud proceeds from Victims 2 and 3 were deposited into accounts controlled by these conspirators and approximately $295,500 of these fraud proceeds were withdrawn from WF Account 3 and BOA Account 4 in cash.

74. The flow of proceeds from initial wire transfers from Victims 2 and 3, to and through conspirator financial accounts WF Account 3, WF Account 4, and BOA Account 4 is depicted in the table below. Victim 2 and 3 wires are shaded purple. Wires between conspirator accounts are shaded orange. Cash withdrawals are shaded green:

| DATE | ACCOUNT NUMBER | MONIKER | CREDIT AMOUNT | DEBIT AMOUNT | TYPE |
|------|------|------|------|------|------|
| 3/8/2022 | WF-7903 | WF Account 3 | $60,629.30 | | Wire from Victim 2 |
| 3/9/2022 | WF-7903 | WF Account 3 | | $20,000.00 | Cash Withdrawal |
| 3/9/2022 | WF-7903 | WF Account 3 | | $37,000.00 | Wire to BOA Account 4 |
| 3/9/2022 | BOA-3839 | BOA Account 4 | $37,000.00 | | Wire from WF Account 3 |
| 3/10/2022 | BOA-3839 | BOA Account 4 | | $15,000.00 | Cash Withdrawal |
| 3/11/2022 | BOA-3839 | BOA Account 4 | | $22,000.00 | Cash Withdrawal |
| 3-24-2022 | WF-7903 | WF Account 3 | $107,149.96 | | Wire from Victim 2 |
| 3/25/2022 | WF-7903 | WF Account 3 | $288,324.60 | | Wire from Victim 3 |
| 3-25-2022 | WF-7903 | WF Account 3 | | $20,000.00 | Cash Withdrawal |
| 3-25-2022 | WF-7903 | WF Account 3 | | $81,000.00 | Wire to BOA Account 4 |
| 3/25/2022 | BOA-3839 | BOA Account 4 | $81,000.00 | | Wire from WF Account 3 |
| 3/25/2022 | BOA-3839 | BOA Account 4 | $43,419.17 | | Wire from Victim 2 |
| 3/28/2022 | BOA-3839 | BOA Account 4 | | $38,500.00 | Cash Withdrawal |
| 3/28/2022 | BOA-3839 | BOA Account 4 | | $30,000.00 | Cash Withdrawal |
| 3/28/2022 | WF-7903 | WF Account 3 | | $200,000.00 | Wire to BOA Account 4 |
| 3/28/2022 | BOA-3839 | BOA Account 4 | $200,000.00 | | Wire from WF Account 3 |
| 3/29/2022 | WF-7903 | WF Account 3 | | $20,000.00 | Cash Withdrawal |
| 3/29/2022 | BOA-3839 | BOA Account 4 | | $15,000.00 | Cash Withdrawal |
| 3/29/2022 | BOA-3839 | BOA Account 4 | | $10,000.00 | Cash Withdrawal |
| 3/30/2022 | BOA-3839 | BOA Account 4 | | $10,000.00 | Cash Withdrawal |
| 3/31/2022 | BOA-3839 | BOA Account 4 | | $20,000.00 | Cash Withdrawal |
| 3/31/2022 | WF-7903 | BOA Account 4 | | $25,000.00 | Cash Withdrawal |
| 4/1/2022 | BOA-3839 | BOA Account 4 | | $50,000.00 | Cash Withdrawal |
| 4/4/2022 | BOA-3839 | BOA Account 4 | | $30,231.00 | Cash Withdrawal |
| 4/4/2022 | BOA-3839 | BOA Account 4 | | $10,000.00 | Cash Withdrawal |
| 4/6/2022 | WF-8183 | WF Account 4 | $159,190.19 | | Wire from Victim 2 |
| 4-7-2022 | WF-8183 | WF Account 4 | | $111,000.00 | Wire to WF Account 3 |
| 4-7-2022 | WF-8183 | WF Account 4 | | $40,000.00 | Wire to WF Account 3 |

| 4-8-2022 | WF-7903 | WF Account 3 | $111,000.00 | | Wire from WF Account 4 |
|---|---|---|---|---|---|
| 4-8-2022 | WF-7903 | WF Account 3 | | $40,000.00 | Wire to BOA Account 4 |
| 4-8-2022 | BOA-3839 | BOA Account 4 | $40,000.00 | | Wire from WF Account 3 |
| 4-8-2022 | BOA-3839 | BOA Account 4 | | $9,000.00 | Cash Withdrawal |

75.     One or more conspirators then converted some of these fraud proceeds from fiat currency to virtual currency, using virtual currency ATMs operated by Bitcoin Depot and other vendors and wire transfers. Some of the purchased cryptocurrency has been traced to the Subject Wallet at the Subject Account.

### S.W. Virtual Currency Purchases

76.     Between March 9, 2022 and March 29, 2022, S.W. deposited $66,380.00 in cash into Bitcoin Depot ATMs for the purchase of virtual currency. The associated virtual currency, totaling 1.25817582 BTC, was deposited into three identified wallet addresses:

| Transaction Date | Transaction Value [Bitcoin] | Receiving Wallet Address |
|---|---|---|
| 3/9/2022 11:13 | 0.09633957 | bc1q9nygzf9hghasdlqfzluu8a8kucwz0llhltn8wh |
| 3/9/2022 11:18 | 0.0018947 | bc1q9nygzf9hghasdlqfzluu8a8kucwz0llhltn8wh |
| 3/10/2022 11:13 | 0.31649687 | bc1q9nygzf9hghasdlqfzluu8a8kucwz0llhltn8wh |
| 3/25/2022 13:03 | 0.28358918 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 |
| 3/26/2022 12:19 | 0.11853435 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 |
| 3/26/2022 12:28 | 0.00332022 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 |
| 3/28/2022 11:55 | 0.26297146 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 |
| 3/29/2022 14:59 | 0.17502947 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| **TOTAL:** | 1.25817582 | |

| Transaction Date | Transaction Value [Fiat] | Transaction Value [Bitcoin] | Receiving Wallet Address (Truncated) | Moniker |
|---|---|---|---|---|
| 3/9/2022 | $4,900 | 0.09633957 | bc1q9n | Wallet 1 |
| 3/9/2022 | $100 | 0.0018947 | bc1q9n | Wallet 1 |
| 3/10/2022 | $14,900 | 0.31649687 | bc1q9n | Wallet 1 |
| 3/25/2022 | $15,000 | 0.28358918 | bc1qm3 | Wallet 2 |
| 3/26/2022 | $6,300 | 0.11853435 | bc1qm3 | Wallet 2 |
| 3/26/2022 | $180 | 0.00332022 | bc1qm3 | Wallet 2 |
| 3/28/2022 | $15,000 | 0.26297146 | bc1qm3 | Wallet 2 |
| 3/29/2022 | $10,000 | 0.17502947 | bc1qhl | Wallet 3 |
| **TOTAL:** | $66,380 | 1.25817582 | | |

Verified Complaint for Forfeiture *in Rem* - 24
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

77.     Between March 9, 2022 and March 10 2022, Wallet 1 (bc1q9nygzf9hghasdlqfzluu8a8kucwz0llhltn8wh or truncated as "bc1q9n"), shaded in the tables above in yellow, received virtual currency from three S.W. transactions, totaling approximately 0.41 BTC. On March 16, 2022, 0.41 BTC was combined with other deposits and a total of 1.47 BTC was sent to the Subject Wallet held in the Subject Account. 0.41 BTC of this transaction is proceeds of, or property derived from proceeds of, the wire fraud scheme and is traceable to the funds defrauded from Victim 2.

78.     Between March 25, 2022 and March 28, 2022, Wallet 2 (bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 or truncated as "bc1qm3"), shaded in the table above in green, received virtual currency from four S.W. transactions, totaling approximately 0.67 BTC. On March 28, 2022, 0.67 BTC was combined with other deposits and a total of 1.29 BTC was sent to the Subject Wallet held in the Subject Account. 0.67 BTC of this transaction is proceeds of, or property derived from proceeds of, the wire fraud scheme and is traceable to the funds defrauded from Victims 2 and 3.

79.     Wallet 3 (bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r or truncated as "bc1qhl"), shaded in the table above in blue, received 0.17 BTC from a S.W. transaction on March 29, 2022. On April 1, 2022, 0.17 BTC was combined with other deposits and a total of 1.93 BTC was sent to the Subject Wallet held in the Subject Account. 0.17 BTC of this transaction is proceeds of, or property derived from proceeds of, the wire fraud scheme and is traceable to the funds defrauded from Victims 2 and 3.

//

//

//

//

Verified Complaint for Forfeiture *in Rem* - 25
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

80.     A visual representation of the tracing of these funds from the Bitcoin Depot
ATM transactions conducted by S.W. to the Subject Wallet in the Subject Account is
provided below, and is attached as Exhibit A:



81.     During this period, S.W. also purchased virtual currency using other
vendors, including LibertyX, RockItCoin, National Air of Texas.

a.      Between March 28, 2022 and April 10, 2022, S.W. conducted at
least 11 transactions with LibertyX, in which she purchased approximately 0.93993581
BTC for approximately $46,850. S.W. sent this BTC to various wallet addresses,
including approximately 0.13120063 BTC to Wallet 3.

| Transaction Date | Transaction Value [Bitcoin] | Receiving Wallet Address |
|---|---|---|
| 2022-03-28 14:16 | 0.09602031 | 3GjdrwhS9o9xUn4cw9MJePqRbXZBTR44aU |
| 2022-03-30 12:11 | 0.09720147 | 3GjdrwhS9o9xUn4cw9MJePqRbXZBTR44aU |
| 2022-03-31 18:25 | 0.09992026 | 3GjdrwhS9o9xUn4cw9MJePqRbXZBTR44aU |
| 2022-04-01 14:07 | 0.09829505 | 3GjdrwhS9o9xUn4cw9MJePqRbXZBTR44aU |
| 2022-04-02 12:34 | 0.09885833 | bc1q6m7j8pwtf9s2s0ss5wrgt37697g78gt63qn6fs |
| 2022-04-03 11:59 | 0.09856943 | bc1q6m7j8pwtf9s2s0ss5wrgt37697g78gt63qn6fs |
| 2022-04-04 11:28 | 0.10017514 | 3KJnzSmgd9e4cu5q4x5XSNXXNDsCHNZyKz |
| 2022-04-05 10:43 | 0.01494602 | bc1q35cakm3s5nalmdltl33z7ncxjw805r2zecdmgd |
| 2022-04-08 12:23 | 0.10474917 | 3KJnzSmgd9e4cu5q4x5XSNXXNDsCHNZyKz |
| 2022-04-09 14:33 | 0.10762963 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-10 11:14 | 0.02357100 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| **TOTAL:** | 0.93993581 | |

Verified Complaint for Forfeiture *in Rem* - 26
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Transaction Date | Transaction Value [Fiat] | Transaction Value [Bitcoin] | Receiving Wallet Address (Truncated) | Moniker |
|---|---|---|---|---|
| 2022-03-28 14:16 | $5,000 | 0.09602031 | 3Gjdrw | Wallet 4 |
| 2022-03-30 12:11 | $5,000 | 0.09720147 | 3Gjdrw | Wallet 4 |
| 2022-03-31 18:25 | $5,000 | 0.09992026 | 3Gjdrw | Wallet 4 |
| 2022-04-01 14:07 | $5,000 | 0.09829505 | 3Gjdrw | Wallet 4 |
| 2022-04-02 12:34 | $5,000 | 0.09885833 | bc1q6m | |
| 2022-04-03 11:59 | $5,000 | 0.09856943 | bc1q6m | |
| 2022-04-04 11:28 | $5,000 | 0.10017514 | 3KJnzS | |
| 2022-04-05 10:43 | $750 | 0.01494602 | bc1q35 | |
| 2022-04-08 12:23 | $5,000 | 0.10474917 | 3KJnzS | |
| 2022-04-09 14:33 | $5,000 | 0.10762963 | bc1qhl | Wallet 3 |
| 2022-04-10 11:14 | $1,100 | 0.02357100 | bc1qhl | Wallet 3 |
| **TOTAL:** | $46,850 | 0.93993581 | | |

b. Between March 25, 2022 and April 9, 2022, S.W. conducted at least 12 transactions with RockitCoin, in which she purchased approximately 2.34959885 BTC for approximately 0.93993581 BTC for approximately $118,800. S.W. sent this BTC to various wallet addresses, including approximately 0.39980813 BTC to Wallet 2 ($7,800) and approximately 1.84090157 to Wallet 3 ($104,800).

| Transaction Date | Transaction Value [Bitcoin] | Receiving Wallet Address |
|---|---|---|
| 2022-03-25 12:23 | 0.09416196 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 |
| 2022-03-26 10:57 | 0.28285732 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 |
| 2022-03-28 11:41 | 0.02278885 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 |
| 2022-03-28 12:03 | 0.10888915 | 3GjdrwhS9o9xUn4cw9MJePqRbXZBTR44aU |
| 2022-03-29 11:20 | 0.2602784 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-03-30 10:50 | 0.17670476 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-03-31 10:32 | 0.26801695 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-01 10:40 | 0.26820749 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-02 10:44 | 0.2706255 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-03 11:33 | 0.0180183 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-08 10:27 | 0.28455892 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-09 11:54 | 0.29449125 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| **TOTAL:** | 2.34959885 | |

Verified Complaint for Forfeiture *in Rem* - 27
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Transaction Date | Transaction Value [Fiat] | Transaction Value [Bitcoin] | Receiving Wallet Address [Truncated] | Moniker |
|---|---|---|---|---|
| 2022-03-25 12:23 | $5,000 | 0.09416196 | bc1qm3 | Wallet 2 |
| 2022-03-26 10:57 | $1,500 | 0.28285732 | bc1qm3 | Wallet 2 |
| 2022-03-28 11:41 | $1,300 | 0.02278885 | bc1qm3 | Wallet 2 |
| 2022-03-28 12:03 | $6,200 | 0.10888915 | 3Gjdrw | Wallet 4 |
| 2022-03-29 11:20 | $14,800 | 0.2602784 | bc1qhl | Wallet 3 |
| 2022-03-30 10:50 | $10,000 | 0.17670476 | bc1qhl | Wallet 3 |
| 2022-03-31 10:32 | $15,000 | 0.26801695 | bc1qhl | Wallet 3 |
| 2022-04-01 10:40 | $15,000 | 0.26820749 | bc1qhl | Wallet 3 |
| 2022-04-02 10:44 | $15,000 | 0.2706255 | bc1qhl | Wallet 3 |
| 2022-04-03 11:33 | $5,000 | 0.0180183 | bc1qhl | Wallet 3 |
| 2022-04-08 10:27 | $15,000 | 0.28455892 | bc1qhl | Wallet 3 |
| 2022-04-09 11:54 | $15,000 | 0.29449125 | bc1qhl | Wallet 3 |
| TOTAL: | $118,800 | 2.34959885 | | |

c.     Between March 31, 2022 and April 9, 2022, S.W. conducted at least seven transactions with National Air of Texas, in which she purchased approximately 1.49403686 BTC for approximately $70,120. S.W. sent this BTC to various wallet addresses, including approximately 1.21846883 BTC to Wallet 3 ($55,000).

| Transaction Date | Transaction Value [Bitcoin] | Receiving Wallet Address |
|---|---|---|
| 2022-03-31 14:42 | 0.2712255 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-01 15:07 | 0.18141177 | 3GjdrwhS9o9xUn4cw9MJePqRbXZBTR44aU |
| 2022-04-01 15:14 | 0.09026909 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-02 15:13 | 0.27082485 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-04 15:14 | 0.09415626 | 3GjdrwhS9o9xUn4cw9MJePqRbXZBTR44aU |
| 2022-04-08 14:42 | 0.28995034 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| 2022-04-09 17:29 | 0.29619905 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r |
| TOTAL: | 1.49403686 | |

//

//

Verified Complaint for Forfeiture *in Rem* - 28
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Transaction Date | Transaction Value [Fiat] | Transaction Value [Bitcoin] | Receiving Wallet Address [Truncated] | Moniker |
|---|---|---|---|---|
| 2022-03-31 14:42 | $15,000 | 0.2712255 | bc1qhl | Wallet 3 |
| 2022-04-01 15:07 | $10,000 | 0.18141177 | 3Gjdrw | Wallet 4 |
| 2022-04-01 15:14 | $5,000 | 0.09026909 | bc1qhl | Wallet 3 |
| 2022-04-02 15:13 | $5,000 | 0.27082485 | bc1qhl | Wallet 3 |
| 2022-04-04 15:14 | $5,120 | 0.09415626 | 3Gjdrw | Wallet 4 |
| 2022-04-08 14:42 | $15,000 | 0.28995034 | bc1qhl | Wallet 3 |
| 2022-04-09 17:29 | $15,000 | 0.29619905 | bc1qhl | Wallet 3 |
| **TOTAL:** | $118,800 | 1.49403686 | | |

### *Victim 4*

82.     Victim 4 also reported being a victim of a BEC wire fraud scheme with losses totaling approximately $302,683.25. Funds defrauded from Victim 4 have also been traced to conspirators involved in this BEC wire fraud scheme and to the Subject Wallet in the Subject Account.

### *L.S.*

83.     On or about November 17, 2022, based on fraudulent wire instructions, Victim 4 wired $302,683.25 to a Bank of America account ending in -4988. The receiving account is held in the name of [L.S.], doing business as Payoff Service Account (BOA Account 5).

a.     Prior to receiving the wire from Victim 4, BOA Account 5 had a balance of $100.

b.     Other than this wire and reward payments totaling $12.82, BOA Account 5 received no other deposits in November 2022.

c.     At the close of the statement period, November 29, 2022, BOA Account 5 had a balance of $100.25.

84.     After the wire from Victim 4 was deposited to BOA Account 5, L.S. made a series of financial transactions, depleting approximately $297,666.25 from BOA Account 5. These transactions included cash withdrawals ($60,000), wire transfers to

Verified Complaint for Forfeiture *in Rem* - 29
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

other L.S. financial accounts ($193,848), and wire transfers to accounts held by co-conspirator K.D.W. ($43,818.25):

          a.     On or about November 21, 2022, L.S. withdrew cash of $10,000.

          b.     On or about November 21, 2022, L.S. withdrew cash of $50,000.

          c.     On or about November 22, 2022, L.S. conducted two wire transfers, totaling $150,000, from BOA Account 5 to Advantis Credit Union account ending in x3002, in the name of L.S. (ACU Account 1). The Balance on ACU Account 1 prior to these wire transfers was $24,057.78.

          d.     A few days later, on or about November 25, 2022, L.S. wired $150,000 to a United Community Bank account ending in x4746, held in the name of [K.D.W.] Payoff Account Service (UCB Account 1).

          e.     On or about November 29, 2022, L.S. wired $48,848.00 to ACU Account 1. L.S. deposited an Advantis Credit Union cashier's check in the same amount and payable to L.S. to BOA Account 5 on or about December 1, 2022.

          f.     On or about December 14, 2022, L.S. wired $43,818.25 to K.D.W.'s UCB Account 1.

**K.D.W.**

85.     K.D.W. received deposits into UCB Account 1 of approximately $193,818.25 of funds transferred from L.S. accounts.

| Date | Amount | Sending Account | Destination Moniker | Destination Account Number |
|------|--------|-----------------|---------------------|----------------------------|
| 11-25-2022 | $150,000.00 | ACU Account 1 | UCB Account 1 | UCB-4746 |
| 12-14-2022 | $43,818.25 | BOA Account 5 | UCB Account 1 | UCB-4746 |
| Total: | $193,818.25 | | | |

Immediately prior to receiving the $150,000 wire transfer from L.S. on November 25, 2022, UCB Account 1 had a balance of $12.15. Immediately prior to receiving the $43,818.25 transfer on December 14, 2022, UCB Account 1 had a balance of $2.15.

Verified Complaint for Forfeiture *in Rem* - 30
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

86.     K.D.W. subsequently sent wire transfers totaling approximately $192,000 from his accounts at United Community Bank to his account at Coinbase, for the purchase of virtual currency. Some of this virtual currency has been traced to the Subject Wallet in the Subject Account from which the Subject Cryptocurrency was seized.

a.     On or about November 25, 2022, K.D.W. transferred $150,000 to another United Community Bank in his name, ending in -4754 (UCB Account 2). Immediately prior to this transfer, UCB Account 2 had a balance of $7.26.

b.     On or about November 25, 2022, K.D.W. wired $148,500 from UCB Account 2 to his account at Coinbase, a cryptocurrency exchange. Coinbase records reflect that on or about November 25, 2022, K.D.W. purchased 8.77 BTC, which was deposited to Bitcoin wallet address bc1qrrzml7jzqvr5pet8eatjnva0h7z58sux3cuspy (truncated, "bc1qrr").

c.     On or about December 14, 2022, K.D.W. wired $43,500 from UCB Account 1 to his account at Coinbase.

(1)     Coinbase records show that on or about December 14, 2022, K.D.W. purchased .86 BTC. The subsequent transaction shows .86 BTC was sent to Bitcoin wallet address bc1qw3uejwldxdf68pccunhdqt5y458z8h8sjaav35 (truncated, "bc1qw3").

(2)     Coinbase records show that on or about December 14, 2022, K.D.W. purchased .93 BTC. The subsequent transaction shows .93 BTC was sent to Bitcoin wallet address bc1q7etpnswfutadughlnf3lpd4ymm9vyksfn7mwrz (truncated, "bc1q7e").

87.     Blockchain analysis shows the BTC K.D.W. sent to the three wallet addresses identified above was transferred through a series of different wallets before being combined with other deposits on December 16, 2022, when a total of 10.344 BTC was sent to the Subject Wallet in the Subject Account. Approximately 8.88 BTC of this

Verified Complaint for Forfeiture *in Rem* - 31
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | transaction is proceeds of, or property derived from proceeds of, the wire fraud scheme

2 | and is traceable to the funds defrauded from Victim 4.

3 | 88.   A visual representation of the tracing from K.D.W.'s Coinbase account to

4 | the Subject Wallet in the Subject Account is provided below and is attached as Exhibit B:



13 | **Victim 5**

14 | 89.   These conspirators also compromised electronic communication accounts

15 | used by Victim 5. On or about December 23, 2021, based on forged wire instructions,

16 | Victim 5 wired $198,888.07 to a JPMorgan Chase account ending in -7218, held in the

17 | name of [M.K.], doing business as The Payoff Collection LLC (JPMC Account 2).

18 | 90.   On December 1, 2021, the balance in JPMC Account 2 was $20.

19 | a.   On December 22, 2021, JPMC Account 2 received a wire transfer of

20 | $122,310.38 from Citizens Bank with a description of "Payoff Loan 3345396351." This

21 | transaction bears indicia of also being part of the BEC wire fraud scheme. The same day,

22 | M.K. transferred $80,000 to an account ending x4935.

23 | b.   On December 23, 2021, JPMC Account 2 received the wire transfer

24 | from Victim 5, with a description of "Payoff For Loan #1305102764."

25 | c.   There were no other deposits to JPMC Account 2 in December 2021.

26 |

27 |

Verified Complaint for Forfeiture *in Rem* - 32
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

91.     Between December 23 and 31, 2021, M.K. depleted JPMC Account 2 to a balance of $53.45 by transferring funds to other accounts under her control and withdrawing funds in cash.

a.      On December 23, 2021, M.K. made two cash withdrawals from JPMC Account 2, totaling $18,000.

b.      On December 23, 2021, M.K. wired $50,000 from JPMC Account 2 to a Bank of America account in the name of The Payoff Service LLC, with the description "Partial Split From Sale."

c.      On December 23, 2021, M.K. wired $50,000 from JPMC Account 2 to a Bank of the West account ending in x3405, in the name of M.K. (BOTW Account 1). Immediately prior to the deposit of this wire from JPMC Account 2, the balance on BOTW Account 1 was $1,213.05.

(1)     On the same day, M.K. wired $10,000 from BOTW Account 1 to a Bank of the West account ending in x3447, in the name of M.K. (BOTW Account 2) and made a cash withdrawal in the amount of $5,000.

(2)     The following day, December 24, 2021, M.K. made a cash withdrawal from BOTW Account 1 of $5,000 and withdrew an additional $500 using an ATM.

d.      On December 23, 2021, M.K. wired $50,000 from JPMC Account 2 to a Bank of America account in the name of The Payoff Service LLC.

e.      On December 24, 2021, M.K. wired $50,000 from JPMC Account 2 to a Bank of America account in the name of The Payoff Service LLC, with the description "Split from Sale Remainder."

f.      On December 28, 2021, M.K. made a cash withdrawal from JPMC Account 2 of $10,000.

g.      On December 29, 2021, M.K. made a cash withdrawal from JPMC Account 2 of $5,000.

Verified Complaint for Forfeiture *in Rem* - 33
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     f.     On December 31, 2021, M.K. transferred $8,000 to an account

2  ending x4935.

3     92.     Bitcoin Depot records show that between December 23, 2021 and

4  December 25, 2021, M.K. deposited $35,000 in cash into Bitcoin Depot ATMs. A

5  summary of those deposits appears in the table below:

| Transaction Date | Transaction Value [Fiat] | Transaction Value [Bitcoin] | Transaction Bitcoin Address |
|---|---|---|---|
| 12/23/2021 | $15,000.00 | 0.24602331 | bc1q84eklysc2659p6cqhyfv8008ur88whq6nqp4tl |
| 12/24/2021 | $5,000.00 | 0.08144616 | bc1q84eklysc2659p6cqhyfv8008ur88whq6nqp4tl |
| 12/25/2021 | $15,000.00 | 0.24738509 | bc1q84eklysc2659p6cqhyfv8008ur88whq6nqp4tl |

11     93.     Between December 23, 2021 and December 25, 2021, wallet address

12  bc1q84eklysc2659p6cqhyfv8008ur88whq6nqp4tl (truncated as "bc1q84") received

13  approximately 0.57 BTC from these three transactions.

14     94.     Blockchain analysis shows that on or about December 28, 2021,

15  0.24601818 BTC was sent from wallet address "bc1q84" to wallet address

16  bc1qfn979l84prrzccp6r9v302u48emglu20nrwh49 (truncated as "bc1qfn"). This BTC was

17  further traced through a series of additional wallet addresses (nine total), a process known

18  as a "peel chain", a commonly used method to launder funds.

19     95.     On or about February 26, 2022, the traced BTC was combined with other

20  BTC deposits and a total of 2.56 BTC was sent to the Subject Wallet at the Subject

21  Account. Approximately 0.56 BTC of this transaction is proceeds of, or derived from

22  proceeds of, the wire fraud scheme and traceable to funds defrauded from Victim 5.

23  /

24  //

25  //

26  //

27  //

Verified Complaint for Forfeiture *in Rem* - 34
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

96.     A visual representation of this tracing is provided below and is attached at
Exhibit C:



97.     The table below reflects the final transactions depositing the traced fraud
proceeds from Victims 2 – 5 into the Subject Wallet:

| Date and Time (UTC) | From | To | BTC Amount |
|---|---|---|---|
| 2/26/2022 10:42:23 | bc1q84eklysc2659p6cqhyfv8008ur88whq6nqp4tl | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.24602331 |
| 2/26/2022 10:42:23 | bc1q84eklysc2659p6cqhyfv8008ur88whq6nqp4tl | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.08144616 |
| 2/26/2022 10:42:23 | bc1q9c8u4lscldqnax2dumlz2kmns6het57jpnyes6 | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.23588499 |
| 3/16/2022 22:21:02 | bc1q9nygzf9hghasdlqfzluu8a8kucwz0llhltn8wh | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.0018947 |
| 3/16/2022 22:21:02 | bc1q9nygzf9hghasdlqfzluu8a8kucwz0llhltn8wh | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.09633957 |
| 3/16/2022 22:21:02 | bc1q9nygzf9hghasdlqfzluu8a8kucwz0llhltn8wh | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.31649687 |
| 3/28/2022 23:36:39 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.00332022 |
| 3/28/2022 23:36:39 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.28358918 |
| 3/28/2022 23:36:39 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.11853435 |
| 3/28/2022 23:36:39 | bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3 | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.26297146 |
| 4/1/2022 22:57:58 | bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.17502947 |
| 12/16/2022 18:03:56 | bc1qea34l2ltafdxgpvnrh93f673qrlwzm7mxl2p5n | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.791292 |
| 12/16/2022 18:03:56 | bc1qq0quwwz5hsun3knadmgrgymxanzqgum7x2xwth | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 0.38714222 |
| 12/16/2022 18:03:56 | bc1q57e8k5t7gfddcgg5n563mryav3lj0stj4nn7zp | 1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg | 7.71044545 |

Verified Complaint for Forfeiture *in Rem* - 35
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2   98.    For each of the transactions, the victim funds were traced on the blockchain

3   through a series of transfers between cryptocurrency addresses, known as "hops," to their

4   arrival in the Subject Wallet at the Subject Account.

5   99.    Based on blockchain information, USSS investigators confirmed the

6   transferring, purchasing, and exchange of the fraud proceeds through the blockchain (*i.e.*,

7   the public ledger or record of all transfers) to the cryptocurrency and wallets identified in

8   this Complaint. The blockchains for these cryptocurrencies revealed the date and time of

9   the transactions involved, the originating public addresses for each transaction, the

10  destination public addresses for each transaction, the amount of cryptocurrency

11  transferred for each transaction, and the transaction hash (an identification number

12  uniquely associated with that particular transaction that becomes part of the blockchain

13  going forward). Based on this information, each transfer and exchange has been

14  confirmed in the blockchain. Using publicly available blockchain explorers, USS

15  investigators have traced fraudulently obtained funds from four identified victims of this

16  BEC wire scheme to the Subject Wallet at the Subject Account.

17  100.    The USSS's investigation determined that the majority of the fraudulent

18  transfers were sent through a series of virtual currency wallet addresses before ultimately

19  being deposited into the Subject Wallet in the Subject Account at Binance. In response to

20  a request for information, Binance provided account records for one user whose account

21  was directly involved in the receipt of funds linked to multiple victims of the BEC wire

22  fraud scheme described above.

23  101.    On or about October 2, 2023, the USSS executed a properly authorized

24  federal search warrant on the Subject Account and directed Binance to place the contents

25  of the Subject Account – the Defendant Cryptocurrency – in a USSS maintained virtual

26  currency wallet.

27  //

Verified Complaint for Forfeiture *in Rem* - 36
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## X.    CLAIM FOR RELIEF

2       102.    As required by Supplemental Rule G(2)(f), the facts set forth in this

3  Verified Complaint support a reasonable belief that the United States will be able to meet

4  its burden of proof at trial. More specifically, there is probable cause to believe that the

5  Defendant Cryptocurrency is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) because it

6  constitutes or is derived from proceeds of Wire Fraud, in violation of 18 U.S.C. § 1343

7  and Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and pursuant to

8  18 U.S.C. § 981(a)(1)(A) because it is property involved in Money Laundering and

9  Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956 and 1957.

10  //

11

12  //

13

14  //

15

16  //

17

18  //

19

20  //

21

22  //

23

24  //

25

26  //

27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

WHEREFORE, the United States respectfully requests:

1.      A warrant be issued for the arrest of the Defendant Cryptocurrency;

2.      Due notice be given to all interested parties to appear and show cause why the Defendant Cryptocurrency should not be forfeited;

3.      Judgment be entered declaring the Defendant Cryptocurrency, any derivative cryptocurrency, and any interest to be condemned and forfeited to the United States for disposition according to law; and,

4.      The United States be granted such other and further relief as this Court may deem just and proper.

DATED this 29th day of December, 2023.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

KRISTA K. BUSH
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-2242
Fax: (206) 553-6934
Krista.Bush@usdoj.gov

Verified Complaint for Forfeiture *in Rem* - 38
*United States v. Approximately 32.68342694 Bitcoin, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**VERIFICATION**

1

2   I, Paul Vanderwulp, I am a Special Agent ("SA") with the United States Secret

3   Service ("USSS") and have been so employed since November 2021. The USSS is the

4   primary investigative agency charged with safeguarding the payment and financial

5   systems of the United States. I am currently assigned to the Seattle Field Office as a

6   member of the Cyber Fraud Task Force.

7   In my capacity as a Special Agent, I attended and completed the 21-week, 840

8   hour, USSS Special Agent Training Course at the James J. Rowley Training Center

9   (RTC) located in Beltsville, Maryland. This program included comprehensive, formalized

10  instruction in, among other things: fraud investigations, counterfeit identification and

11  detection, familiarization with United States' fraud and counterfeit laws, financial

12  investigations and money laundering, identification and seizure of assets, physical and

13  electronic surveillance, and undercover operations. I completed the 59 days and over 470-

14  hour Criminal Investigator Training Program (CITP) at the Federal Law Enforcement

15  Training Center (FLETC).

16  In January 2023 I completed 120 hours at the Basic Network Intrusion Responder

17  Training (BNITRO) at RTC in Beltsville, MD. The focus of the training was to establish

18  a foundation for Digital Forensic Network Intrusion – Network Response (DFIR-NI) for

19  common schemes and illicit activity including but not limited to, Business Email

20  Compromise (BEC), Ransomware and Point of Sale (POS) system breaches. I have

21  completed 40 hours at the National Computer Forensic Institute (NCFI) which included

22  cyber investigations with computers and phones. NCFI also consisted of investigative

23  procedures, law enforcement procedures, cybercrime training, and mobile device/data

24  analysis as it relates to criminal investigations.

25  //

26

27  //

Verified Complaint for Forfeiture *in Rem* - 39
*United States v. Approximately 32.68342694 Bitcoin*

During my time in federal law enforcement, I have been trained in criminal investigations. This training has involved investigation into the unlawful takeover of financial accounts, business email compromise schemes, network intrusions, counterfeit currency investigations, and protective intelligence investigations.

In 2017, I attended a 40-hour class at FLETC entitled, "Money Laundering and Asset Forfeiture". In 2016, I attended the 120 hour Washington State Patrol Detective Basic course located in Shelton, WA. In September 2013 I was hired as an officer for the Washington State Liquor and Cannabis Board and in December of 2014 graduated the 720-hour Basic Law Enforcement Academy (BLEA) at the Criminal Justice Training Center (CJTC) in Burien, WA.

I graduated in May 2012 from Azusa Pacific University with a Bachelor of Arts (B.A) in Business Administration. In May 2012 I began employment with Nordstrom as a Loss Prevention Agent.

My duties included internal, external and process loss management. This included training on theft, robbery, device fraud, identity theft, organized retail theft (ORT) and other Revised Code of Washington (RCW) criminal statutes.

I am an investigating or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations and to make arrests for federal offenses. I furnished the investigative facts contained in the foregoing Verified Complaint for Forfeiture *In Rem*. The investigative facts are based on personal knowledge I obtained from my involvement in the underlying

//

//

//

Verified Complaint for Forfeiture *in Rem* - 40
*United States v. Approximately 32.68342694 Bitcoin*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  investigation, my review of the relevant investigative material, other federal agencies and
2  law enforcement officers involved in the investigation, other reliable official Government
3  sources, and my own training and experience.

4       I hereby verify and declare, under penalty of perjury pursuant to 28 U.S.C. § 1746,
5  that I have read the foregoing Verified Complaint for Forfeiture *In Rem*, that I know its
6  contents, and that the facts it contains are true and correct to the best of my knowledge.

7
8       Executed this 29th day of December, 2023.

9
10
11                                
12                      PAUL VANDERWULP
                    Special Agent
13                      United States Secret Service

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Verified Complaint for Forfeiture *in Rem* - 39
*United States v. Approximately 32.68342694 Bitcoin*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# EXHIBIT A



Transaction Date: 3/29/2022 19:13
0.17502947
bc1qhlzdc2xzp3xsdryg9jhzengya8j6kx7w4tsd3r
Transaction Date: 4/1/2022 22:57
0.17502947
Transaction Date: 4/1/2022 22:57
1.93027900
Transaction Date: 3/28/2022 16:22
0.26297146
Transaction Date: 3/26/2022 16:41
0.11853435
Transaction Date: 3/26/2022 16:46
0.00332022
Transaction Date: 3/25/2022 17:25
0.28358918
bc1qm3h49m0mdzrda0rwkdly8vh04zv4wrt68zahe3
Transaction Date: 3/28/2022 23:36
0.11853435
Transaction Date: 3/28/2022 23:36
0.00332022
Transaction Date: 3/28/2022 23:36
0.28358918
Transaction Date: 3/28/2022 23:36
0.26297146
Transaction Date: 3/28/2022 23:36
1.29338600
BINANCE
1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg
(SUBJECT ACCOUNT)
BITCOIN DEPOT
Bitcoin Depot
S.W. Deposits
Transaction Date: 3/9/2022 17:07
0.00189470
Transaction Date: 3/10/2022 16:47
0.31649687
Transaction Date: 3/9/2022 16:29
0.09633957
bc1q9nygzf9hghasdlqfzluu8a8kucwz0llhltn8wh
Transaction Date: 3/16/2022 22:21
0.31649687
Transaction Date: 3/16/2022 22:21
0.00189470
Transaction Date: 3/16/2022 22:21
0.09633957
Transaction Date: 3/16/2022 22:21
1.47852800

# EXHIBIT B



bc1qw3uejwldxdf68pccunhdqt5y458z8h8sjaav35
Transaction Date: 12/14/2022 22:29
0.13235562
bc1q2vqcrz7mvclc684fkx3zatr2twmstfxamqrtdm
Transaction Date: 12/14/2022 23:22
Transaction Date: 12/14/2022 23:22
0.7912920
bc1qea34l2ltafdxgpvnrh93f673qrlwzm7mxl2p5n
Transaction Date: 12/16/2022 18:03
Transaction Date: 12/16/2022 18:03
10.34478852
BINANCE
1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg
(SUBJECT ACCOUNT)
Transaction Date: 12/14/2022 22:03
0.86111436
Transaction Date: 12/14/2022 23:22
0.93109781
coinbase
Coinbase
K.W.
Transaction Date: 12/14/2022 23:06
0.93109781
bc1q7etpnswfutadughlnf3lpd4ymm9vyksfn7mwrz
Transaction Date: 12/16/2022 18:03
0.38714222
Transaction Date: 12/16/2022 18:03
7.71044545
Transaction Date: 11/25/2022 23:26
8.77421760
bc1q57e8k5t7gfddcgg5n563mryav3lj0stj4nn7zp
Transaction Date: 12/8/2022 14:56
7.71044545
bc1qrrzml7jzqvr5pet8eatjnva0h7z58sux3cuspy
Transaction Date: 11/26/2022 1:00
bc1qq0quwwz5hsun3knadmgrgymxanzqgum7x2xwth
bc1q5793j5vu6j9u54dvy6yhyk60wg2ug9jk8aeuwf
Transaction Date: 11/29/2022 13:03
7.71778783
Transaction Date: 12/8/2022 14:33
7.71163656
bc1qn55cr3q4h3vfk7v94m52dc4wyd7ad920kvuuqp
Transaction Date: 12/5/2022 12:37
7.71639360
bc1q7w0xj00qvaw25k30yvcmsuzhz8z4p96ta8w3j4

# EXHIBIT C



bc1q5ql407crclv7276dv54ah30q0w6n4xz9yy75dw
Transaction Date: 1/9/2022 10:14
0.24204095
Transaction Date: 1/10/2022 18:20
0.23962807
bc1qj2vvnedxuy7sla58hjus50vm99dewx55utm7mv
bc1qxyzwglu64cd76r8v3f5gkf8pfsgdqw7t36f67t
Transaction Date: 1/7/2022 10:20
0.24279425
Transaction Date: 1/11/2022 17:17
0.23795677
bc1qhtslayxuya6a69u76yg2t7nukuqwx9epk8fd7w
bc1qvmr054h3pjzelaysaxpth8jk75ulf743pmfuf4
Transaction Date: 12/31/2021 1:09
0.24326794
Transaction Date: 1/12/2022 23:27
0.23636087
bc1qnq5nvscxp3ft8p7ajedcdatkhgwfy6j66xg70k
bc1q4v9mjcntutuuk7hgh04cdfn78vknk9f7s94zwm
Transaction Date: 1/13/2022 23:10
0.23612376
Transaction Date: 12/29/2021 22:57
0.24379221
bc1qr0hfqw3f8dykcz4alk5phgevxnmp9nvrqxnxnz
Transaction Date: 1/14/2022 14:19
0.23588499
bc1qfn979l84prrzccp6r9v302u48emglu20nrwh49
bc1q9c8u4lscldqnax2dumlz2kmns6het57jpnyes6
Transaction Date: 12/28/2021 7:26
0.24601818
Transaction Date: 2/26/2022 10:42
0.23588499
BITCOIN DEPOT
Transaction Date: 12/24/2021 21:24
0.08144616
Transaction Date: 12/23/2021 22:37
0.24602331
Transaction Date: 12/26/2021 2:27
0.24738509
bc1q84eklysc2659p6cqhyfv8008ur88whq6nqp4tl
Transaction Date: 2/26/2022 10:42
0.24602331
Transaction Date: 2/26/2022 10:42
0.08144616
Transaction Date: 2/26/2022 10:42
2.56388100
BINANCE
Bitcoin Depot
M. K.
Deposits
1G3pyCCFENTp8EHANrGBpmEKNobPqA5CLg
(SUBJECT ACCOUNT)

# EXHIBIT D

# FLOW OF FUNDS
# BEC TO BINANCE

